UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EUGENE BAILEY, | |
| Plaintiff, | |
| v. | No. 10 C 5735 |
| CITY OF CHICAGO, WILLIAM SULLIVAN and MICHELLE MOORE-GROSS, | Judge Thomas M. Durkin |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Eugene Bailey filed a complaint against Detectives Michelle Moore-Gross and William Sullivan (the "Detectives") and the City of Chicago, alleging that the Detectives arrested and detained him in violation of the Fourth and Fourteenth Amendments and claims under state law for malicious prosecution and intentional infliction of emotional distress. R. 74. Defendants have filed a motion for summary judgment. R. 80. For the following reasons, Defendants' motion is granted.

**Background**

On September 24, 2009, Derrion Albert was brutally beaten and killed during an after-school brawl among students from Fenger High School in Chicago. Albert's murder was caught on video. R. 82 Ex. D. During the course of the fight, Albert was punched by a person wearing red and black shorts. R. 86 ¶ 12.

The Detectives were assigned to investigate Albert's murder. *Id.* ¶ 5. The Detectives showed the video of the fight to Officer Dorothy Massey, a police officer

assigned to Fenger, and Derrell Bramlett, a Fenger student. Officer Massey had worked at Fenger since 2000, and Bramlett had known Bailey for a year or two as a schoolmate. *Id.* ¶¶ 13, 15, 17, 19. Both Officer Massey and Bramlett identified Bailey immediately and without hesitation, and without any suggestion from the Detectives, as the person wearing red and black shorts who punched Albert. *Id.* ¶¶ 14, 18-19.

Based on these two identifications, the Detectives had Bailey arrested and brought to the Area 2 Detective Headquarters at approximately 9:00 p.m. on September 26, 2009. *Id.* ¶¶ 21, 25. The Detectives questioned Bailey from approximately 10:43 p.m. until 10:53 p.m. on September 26, and from approximately 12 midnight until 12:11 a.m. the next day. R. 82 Ex. J-1. The Detectives then placed a "detective hold" on Bailey so he would not be released. R. 90 ¶ 14.

At about 12:45 a.m. on September 27, Bailey was in the interview room alone and he knocked on the table repeatedly. R. 82 Ex. J; R. 86 Ex. 9. About four minutes later, an officer checked on him and asked what he needed. R. 82 Ex. J; R. 86 Ex. 9.

The Detectives did not attempt to question Bailey again until just after 5:00 p.m. on September 28, at which point Bailey asked for a lawyer and the Detectives immediately ceased questioning him and left the room. R. 86 ¶¶ 59-60. All of Bailey's interactions with the Detectives and other police officers in the interview rooms were recorded. R. 82 Ex. J; R. 86 Exs. 3-5, 8-10, 12-13. Bailey consistently

maintained that he was not present during the fight and would not have hit Albert because they were friends. *Id.*

Just after his arrest on September 26, Bailey was identified from the video by Ali Muhammad, the assistant principal at Fenger, and Tyrone Ento-Nichols and Bernard Broadway, security guards at Fenger. R. 86 ¶ 32; R. 90 ¶ 8. The next day, September 27, Bailey was identified from the video by Officer Charlie McDonald, who worked at Fenger, R. 86 ¶ 52, and Derrick Young, a Fenger student, who said he had left school with Bailey the day of the fight and saw Bailey wearing red and black shorts that day. *Id.* ¶¶ 50-51. Young reaffirmed this information in a written statement for Assistant State's Attorney ("ASA") Kathy Morrissey on September 28. *Id.* ¶ 56. On September 27, Muhammad, who had previously identified Bailey from the video, told Detective Sullivan that he was not 100% sure it was Bailey. Detective Sullivan gave this information to ASA Morrissey. *Id.* ¶ 55.

Bailey appeared before the Honorable Maria Kuriakos Ciesil for a probable cause hearing on September 28 at 7:40 p.m., and Judge Kuriakos Ciesil entered an order finding probable cause. *See* R. 100-1.

In the day or two following Bailey's probable cause hearing, numerous individuals left messages for the Detectives either claiming that it was not Bailey in the video or stating that the person wearing red and black shorts was another person, specifically a juvenile whose identity has been protected by using the initials "D.J." R. 86 ¶ 64. Sometime during the week of September 28, Ento-Nichols and Broadway, the Fenger security guards who had previously identified Bailey

3

from the video, concluded that they were mistaken in identifying Bailey. R. 90 ¶ 17. Broadway went to the police station and shared this information with an unidentified police officer. *Id.* On September 30, Jamal Harding, an eyewitness to the fight, told the Detectives and ASA Jodi Peterson that the person in red and black shorts who punched Albert was "D.J." R. 86 ¶¶ 65-66. That same day, Young, who had previously identified Bailey from the video, recanted this identification in a meeting with the Detectives and ASA Peterson. R. 86 ¶¶ 65, 67. On October 1, Bramlett reaffirmed his identification of Bailey. R. 86 ¶ 69. On October 1, the Detectives told ASA Fabio Valentini that several individuals had come forward and stated that the person in the red and black shorts was not Bailey, but "D.J." R. 89 ¶ 70.

On October 16, two more people who knew Bailey, Markese Keefer and Dantrell Myles, told the Detectives and ASA Peterson that Bailey was not the person in red and black shorts in the video. R. 86 ¶ 73. Myles, who said he had been present during the fight, identified the person in the red and black shorts as D.J. from a Fenger school photo of D.J. *Id.* ¶ 74. On October 19, another person who knew Bailey, Miesha Walker, told ASA Peterson that Bailey was not the person in red and black shorts in the video. *Id.* ¶ 75. That same day, another person who was present at the fight, Dion Blandon, told ASA Peterson that "D.J." was the person in the red and black shorts who had punched Albert. *Id.* ¶ 76.

Charges against Bailey were dropped on October 19, and he was released, *id.* ¶ 77, having spent 23 days in custody.

4

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Analysis**

**A.     Bailey's Federal Claims**

Bailey makes the following claims under federal law: (1) the Detectives violated the Fourth Amendment because they did not have probable cause to arrest Bailey, R. 85 at 2-3; (2) the Detectives violated the Fourth Amendment because they detained Bailey for an unreasonably long period before bringing him before a judge for a probable cause hearing, and the probable cause hearing was deficient, *id.* at 3-7; and (3) the Detectives violated the due process clause of the Fourteenth

Amendment because they failed to inform prosecutors that Ento-Nichols and Broadway had recanted their identifications of Bailey. *Id.* at 7-10.

### 1. Probable Cause for Arrest

"Probable cause [to arrest] exists if at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed . . . an offense." *Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013) (internal quotation marks omitted). The Seventh Circuit has "repeatedly held that a . . . single witness is generally sufficient to establish probable cause." *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007). "[P]robable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 302 (7th Cir. 2011) (internal quotation marks omitted).

Bailey does not dispute that two people identified him from the video and that the Detectives had him arrested on this basis. Rather, Bailey argues that the video is not clear enough for the Detectives to have reasonably relied on identifications made from the video. R. 85 at 2-3. Bailey submits two still images from the video showing the person in red and black shorts, R. 86 Exs. 1, 2, and characterizes the images as "blurred." R. 85 at 3.

The Court has repeatedly reviewed the video and the still images and concludes that it was reasonable for the Detectives to rely on identifications by people who know Bailey, as Officer Massey and Bramlett did, despite the fact that

6

the video is somewhat blurred. If the Detectives themselves had attempted to match individuals in the video to photos of known individuals in police or Fenger records, the fact that the video is not crystal clear would have hampered their efforts. But that is not what the Detectives did. Instead, the Detectives asked Massey and Bramlett to identify anyone they might recognize from the video. Both Massey and Bramlett recognized Bailey immediately and without hesitation, and without any suggestion from the Detectives. Indeed, it appears from the record that Massey's identification of Bailey was the first indication the Detectives had that Bailey might be a suspect. Further, Massey and Bramlett had the opportunity to rewind and pause the video as much as they wished to confirm their identifications. Finally, the Court notes that the video was not so blurry as to prevent numerous people from identifying the person wearing red and black shorts as "D.J." over the course of the three weeks Bailey was detained. Thus, it was reasonable for the Detectives to rely on the identifications made from the video by Massey and Bramlett to justify arresting Bailey.

    **2.**    **Post-Arrest Detention and Probable Cause Hearing**

Detentions of up to 48 hours prior to a judicial probable cause determination are presumptively reasonable. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Nevertheless, an arrested person can attempt to prove that his probable cause hearing was delayed unreasonably. *Id.* at 56. "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the

7

arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.*

Bailey argues that the Detectives detained him for 46 hours and 45 minutes before seeking a probable cause ruling in order to gather additional evidence to "justify" his arrest. R. 85 at 6. But that is of course not what happened here, since, as the Court just noted, the Detectives already had probable cause to "justify" Bailey's arrest in the first place. All the Detectives can be accused of is taking time to "bolster" the case against Bailey, and the Seventh Circuit has held that it is "ludicrous" to argue that the Supreme Court intended to prevent the police from detaining suspects for that reason. *U.S. v. Daniels*, 64 F.3d 311, 314 (7th Cir. 1995); *accord U.S. v. Sholola*, 124 F.3d 803, 820 (7th Cir. 1997).

The cases Bailey cites are not to the contrary. In *Ray v. City of Chicago*, 629 F.3d 660, 663 (7th Cir. 2011), the Seventh Circuit held that "detention times ranging from three to fourteen and one-half hours were not constitutionally unreasonable" in the context of an arrest after a traffic stop. But this holding does not mean that longer detentions are unreasonable in other contexts, such as the murder investigation the Detectives were conducting here.

Bailey also cites *Willis v. City of Chicago*, 999 F.2d 284, 288-89 (7th Cir. 1993), because in that case the Seventh Circuit held that although the police had probable cause to arrest and detain the suspect on an initial charge, the police violated the Fourth Amendment when they continued to detain the suspect to gather evidence against him on a separate charge. Unlike in *Willis*, the Detectives

8

here only detained Bailey to gather evidence on the charge for which he was initially arrested based on probable cause. Thus, Bailey's post-arrest detention did not violate the Fourth Amendment.

Bailey also challenges the sufficiency of his probable cause hearing. *See* R. 97. In his opposition to summary judgment, Bailey initially questioned the authenticity of the documents Defendants submitted to prove that the probable cause hearing actually occurred. *Id.* The parties have since deposed Judge Kuriakos Ciesil, who conducted the hearing, R. 100-1, and Bailey's counsel conceded at oral argument that whether and when the probable cause hearing occurred is no longer in dispute. R. 108 at 20:18-23.[1] Bailey also argues that his probable cause hearing was deficient because Judge Kuriakos Ciesil relied on a conclusory complaint in making her finding. *See* R. 97. This is simply not so. Bailey's arrest report stated that he had been "positively identified." R. 102 at 12. Although Judge Kuriakos Ciesil remembered that she had conducted a probable cause hearing for one of the suspects in the Derrion Albert murder, she did not specifically remember Bailey's hearing. *See* R. 100-1 at 19. But she confirmed that it was her handwriting and signature on the probable cause order. *See id.* at 7. And Judge Kuriakos Ciesil stated that it is her practice to examine the complaint and complaining witnesses for all probable cause hearings, *id.* at 9, and she did not remember deviating from that procedure in Bailey's case. *Id.* at 26. In this case, the Detectives were the

---

[1] Were it still in dispute, the Court would find that the probable cause hearing occurred at the time and date indicated by the documents put forward by Defendants.

complaining witnesses and they knew that Massey and Bramlett had identified Bailey. Therefore, Bailey received a sufficient probable cause hearing.

### 3. Post-Charge Detention

Under *Brady v. Maryland*, the government can violate the due process clause of the Fourteenth Amendment by "fail[ing] to disclose evidence materially favorable to the accused." *Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir. 2010). This duty to disclose "extends to the police and requires that they similarly turn over exculpatory . . . evidence to the prosecutor." *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). The elements of a *Brady* violation are: "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued—in other words, [the evidence was] material[]." *Id.* at 566-67. "[F]avorable evidence is material . . . if there is a 'reasonable probability' that, had the evidence been disclosed . . . the result of the proceeding would have been different." *Bielanski v. County of Kane*, 550 F.3d 632, 643-44 (7th Cir. 2008) (internal quotation marks omitted).

Bailey argues that the Detectives did not inform the prosecutors on the case that Ento-Nichols and Broadway recanted their identifications of Bailey on September 28, and that the State's Attorney would have dismissed the charges against Bailey earlier had the prosecutors known this information. R. 85 at 7. As an initial matter, under federal law, Bailey suffered no prejudice since he was never tried. Unlike some other federal circuits, the Seventh Circuit has held open the

10

possibility that withholding of evidence may be material even if the defendant is acquitted at trial. *See Bielanski*, 550 F.3d at 644-45 (citing cases). Even then, a trial must occur. Courts in this District, however, have held that withholding of evidence cannot be material if the defendant is released without being tried. *See Padilla v. City of Chicago*, 2013 WL 1208567, at *15 (N.D. Ill. Mar. 26, 2013). Thus, Bailey has no claim under *Brady v. Maryland* because he was released before being indicted, let alone tried.

Even if Bailey did have a cognizable claim based on *Brady*, there is no evidence in the record that these defendants—the Detectives—ever learned that Ento-Nichols and Broadway recanted. The record only shows that Broadway communicated with an unidentified "police officer." But even assuming that the Detectives had learned that Ento-Nichols and Broadway recanted their identifications, there is no reason to think that the Detectives would have failed to provide this information to the prosecutors, since the record reflects that the Detectives were working closely with the State's Attorney's Office throughout the investigation. And once the prosecutors had the information, it was within the State's Attorney's discretion, not that of the Detectives, to determine whether Bailey should continue to be detained.

Moreover, even if, contrary to the evidence in the record, the Detectives had this information and failed to disclose it to the prosecutors, there is no "reasonable probability," that "the result of the proceeding would have been different." *Bielanski*, 550 F.3d at 643-44. Within two days of Ento-Nichols and Broadway

11

recanting their identifications of Bailey the prosecutors knew that Young had also recanted his identification of Bailey, that Muhammad had qualified his identification, and Harding and numerous other people had identified "D.J." as the person wearing red and black shorts in the video. Thus, assuming that a delayed release from custody constitutes prejudice under *Brady* (which, as the Court discussed earlier, it does not), there is no "reasonable probability" that at that early point in the investigation the additional knowledge that Ento-Nichols and Broadway had recanted would have altered the prosecutors' calculations of how long to detain Bailey. In any event, the record is insufficient to show that the Detectives knew that Ento-Nichols and Broadway had recanted their identifications, so it was not possible for the Detectives to provide the prosecutors with information they themselves did not have.

### 4. **Qualified Immunity**

Even if the Detectives did violate any of Bailey's rights, they are entitled to qualified immunity, which attaches as long as the Detectives' actions can be described as "reasonable mistakes." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013); *see also Saucier v. Katz*, 533 U.S. 194, 205 (2001) ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct."). A "plaintiff seeking to defeat a defense of qualified immunity must establish two things: first, that she has alleged a deprivation of a constitutional right; and second, that the right in question was

'clearly established.'" *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Even if the video was in fact insufficiently clear for the Detectives to rely on identifications made from the video such that the Detectives violated Bailey's Fourth Amendment rights, it was reasonable for the Detectives to believe that the video was sufficiently clear enough so as to allow individuals to identify Bailey. And even if it was unreasonable for the Detectives to detain Bailey for nearly 47 hours before providing him with a probable cause hearing, it was reasonable for the Detectives to believe they could use that time to confirm or further bolster the probable case they already had. And finally, as the Court discussed above, even if the Detectives knew that Ento-Nichols and Broadway had recanted their identifications, and the Detectives inadvertently failed to provide this information to the prosecutors, such a mistake was not unreasonable in light of the other evidence the prosecutors already had indicating Bailey's innocence.

**B.    Bailey's State Law Claims**

    **1.    Pendent Jurisdiction**

Under 28 U.S.C. §§ 1367(c)(1) and (c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim," if "the claim raises a novel or complex issue of State law," or "the district court has dismissed all claims over which it has original jurisdiction." District courts have "broad discretion in deciding whether to retain supplemental claims." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008). "[T]he general rule is that, when all federal

13

claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). It is appropriate, however, for the Court to retain jurisdiction over pendent claims if it is in the interests of "judicial economy, convenience, fairness, and comity." *Hansen*, 551 F.3d at 608 (internal quotation marks omitted).

Bailey has not raised a "novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Bailey contends that "Illinois courts have not confronted an intentional infliction of emotional distress claim arising out of an abusive interrogation." R. 105 at 1. This, however, is not a novel issue of law, but a question of applying settled law to the particular facts of this case. Bailey has not argued that the resolution of his claim will alter the scope of intentional infliction of emotional distress claims generally. Rather, he argues that Illinois courts have never applied the law of intentional infliction of emotional distress to circumstances like his; but insofar as the facts of every case are unique, every plaintiff could make the argument Bailey makes here. This is not a reason for the Court to decline jurisdiction over Bailey's state law claims.

The only case Bailey cites in which a court ordered remand to decide a "novel issue of State law" under 28 U.S.C. § 1367(c) involved the scope of a statutory taking. In *Key Outdoors Inc. v. City of Galesburg*, 327 F.3d 549, 550 (7th Cir. 2003), the Seventh Circuit instructed the district court to remand the case because, "[n]o state court has addressed the question whether, under Illinois law, a municipality

14

may ban signs and offer only 'amortization' rather than cash compensation. Nor has any state court addressed the question whether the sort of statute [at issue here] would be deemed a taking for purposes of state or federal law." Bailey's claim does not purport to alter Illinois law in an analogous manner.

Bailey cites several other cases to support his argument that the Court should remand his state law claims. *See* R. 105 at 2-3 (citing *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000) ("We also decline to certify to the Wisconsin Supreme Court the question of whether Wisconsin courts would recognize an intentional exposure to a hazardous substance claim. Certification may be appropriate where there are unresolved questions of existing state law but we simply cannot certify every creative but unlikely state cause of action that litigants devise from a blank slate."); *Myers v. County of Lake*, 30 F.3d 847, 852 (7th Cir. 1994) (declining to certify question to Indiana Supreme Court regarding whether "it [would] recognize intentional efforts to commit suicide as defenses to the tort of negligently failing to prevent suicide"); *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir. 1985) (declining "to adopt an innovative rule of state law" regarding opportunity cost damages for breach of contract)). These cases, however, only stand for the rule that "innovative state law claims belong in state court," which Bailey contends applies to his case. R. 105 at 3. Bailey does not, and cannot, argue that the legal questions at issue in *Insolia, Myers* or *Afram* are remotely analogous to his contention that "Illinois courts have not confronted an

intentional infliction of emotional distress claim arising out of an abusive interrogation." R. 105 at 1. Thus, these cases do not support remand here.

Furthermore, judicial economy is served by addressing Bailey's claims in one forum. *See Hansen*, 551 F.3d at 608. This case is three years old. The parties have completed discovery and are ready for trial. The state claims are based on the same conduct as the federal claims. Remanding Bailey's state law claims would only serve to force the state court to duplicate this Court's efforts and delay the ultimate adjudication of this case.

For these reasons, the Court will exercise supplemental jurisdiction and decide Bailey's claims for malicious prosecution and intentional infliction of emotional distress, even though the federal claims have been dismissed.

### 2. Malicious Prosecution

Under Illinois law, for a malicious prosecution claim to be successful the following five elements must be proven: "(1) the defendant commenced or continued a criminal proceeding against the plaintiff; (2) the proceeding was terminated in favor of the plaintiff; (3) there was no probable cause to commence or continue the proceeding; (4) the defendant acted with malice; and (5) the plaintiff suffered damages as a proximate result of the defendant's conduct." *Thompson v. City of Chicago*, 722 F.3d 963, 978 (7th Cir. 2013) (citing *Swick v. Liataud,* 662 N.E.2d 1238, 1242 (Ill. 1996)).

As with his *Brady* claim, Bailey bases his malicious prosecution claim on his allegation that the Detectives did not inform the prosecutor that Ento-Nichols and

16

Broadway recanted their identifications of Bailey on September 28, and that the State's Attorney would have dismissed the charges against Bailey earlier had the prosecutors known this information. R. 85 at 11. Even if Bailey could show that the Detectives knew that Ento-Nichols and Broadway recanted their identifications and maliciously withheld that information from the prosecutors, which he has not, Bailey cannot show that he suffered damages as a result of this conduct. Once Bailey was charged, the decision to continue to detain or release Bailey belonged to the State's Attorney, not the Detectives. And as the Court discussed earlier, by October 1, the prosecutors knew that Harding and others had identified the person in red and black shorts as "D.J.," and that Young had recanted his identification of Bailey. Despite this evidence, the State's Attorney still did not drop charges and release Bailey until October 19. Considering the evidence of Bailey's innocence the prosecutors acquired shortly after Ento-Nichols and Broadway's recanted their identifications, those additional recantations would not have changed the prosecutors' calculations regarding how long they should continue to detain Bailey. In any event, since the record does not show that the Detectives knew that Ento-Nichols and Broadway recanted their identifications of Bailey, Bailey's malicious prosecution claim is dismissed.

### 3. Intentional Infliction of Emotional Distress

Under Illinois law, for an intentional infliction of emotional distress claim to be successful the following elements must be proven: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high

17

probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)).

Bailey alleges that the Detectives are liable for intentional infliction of emotional distress because they "held him in custody in the interview room to try to coerce a false confession." R. 85 at 11. The Court has reviewed the video of the Detectives' interviews with Bailey, and there is nothing extreme or outrageous about them. The Detectives spoke with Bailey for a total of approximately 20 minutes, and questioned him about why a number of people had identified him from the video of Albert's murder. As soon as he asked for an attorney, questioning stopped. Rather than being extreme, this is what the Detectives were supposed to do. As courts in Illinois have noted, "'[t]here is nothing inherently extreme and outrageous about [the police] conducting investigations or inspecting or questioning or suspecting.'" *Swanigan v. Trotter*, 645 F. Supp. 2d 656, 685 (N.D. Ill. 2009) (quoting *Schiller v. Mitchell*, 828 N.E.2d 323, 334 (Ill. App. Ct. 2d Dist. 2005)). Thus, Bailey's claim for intentional infliction of emotional distress is dismissed.

**Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment, R. 80, is granted, and Bailey's complaint is dismissed.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: October 30, 2013